UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FRONTLINE COMMUNICATIONS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 12-cv-8527 |
| | ) | |
| v. | ) | Judge Sharon Johnson Coleman |
| | ) | |
| COMCAST CORPORATION and | ) | |
| COMCAST CABLE COMMUNICATIONS | ) | |
| MANAGEMENT, LLC, | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Frontline Communications, Inc. ("Frontline") brings this action against Comcast Corporation and Comcast Cable Communications Management, LLC (collectively "Comcast") alleging four counts stemming from the parties' Preferred Vendor Agreement. Frontline alleges fraud (Count I), civil conspiracy (Count II), breach of contract (Count III), and intentional interference with prospective economic advantage (Count IV). Comcast moves to dismiss Frontline's complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and for lack of particularity as required under Fed. R. Civ. P. 9(b). For the following reasons, Comcast's motion is granted in its entirety.

**Background**

Comcast provides cable, entertainment, and communication services throughout the United States and Frontline installs cable television services in Illinois and Florida. In January 2009 Frontline and Comcast entered into a Preferred Vendor Agreement (the "Agreement") whereby Comcast would hire Frontline to install its services in Illinois and Florida. The contract was terminable at will and provided that Frontline must meet certain performance objectives and metrics in order to continue receiving work from Comcast and to maintain the parties' contract. Frontline alleges that Comcast assured it that it would continue to receive work if it met the performance objectives and metrics provided by Comcast. Frontline alleges that in weekly performance review meetings, Comcast repeatedly assured it that in order to maintain its contract and to continue receiving more work, Frontline had to meet performance objectives and metrics.

1

Frontline alleges that in reliance on Comcast's representations, it expanded its business first to Fort Lauderdale, Florida in February 2009 and then to West Palm Beach, Florida in June 2011. Frontline alleges that despite consistently being in the top ninetieth percentile of all contractors regarding performance metrics, Comcast unlawfully terminated Frontline for refusing to provide gifts, money and other benefits in exchange for being awarded installment work ("pay for play" scheme). Frontline alleges that Comcast's termination of their contract interfered with a potential business opportunity it had to sell its Florida operations to a third party. Comcast denies these allegations and moves to dismiss Frontline's complaint in its entirety.

**Legal Standard**

When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court accepts as true all of the well-pleaded facts alleged in the complaint and construes all reasonable inferences in favor of the nonmoving party. *See Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 619 (7th Cir. Ill. 2007). To state a claim, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Detailed factual allegations" are not required, but the plaintiff must allege facts that, when accepted as true state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). A claim has facial plausibility when the factual content pleaded in the complaint allows the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. See *id*. at 678.

Additionally, claims alleging fraud must satisfy the heightened pleading requirement of Rule 9(b), which requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) requires the plaintiff to state the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992) (internal quotations omitted). The heightened pleading requirement of Federal Rule of Civil Procedure 9(b) therefore mandates that a complaint alleging fraud contain more substance in order to survive a motion to dismiss than a complaint based on another cause of action governed only by the minimal pleading standards of Rule 8(a)(2). See *Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999) (Rule 9(b) forces "the plaintiff to do more than the usual investigation before filing his complaint").

**Discussion**

*1. Count I: Fraud*

Comcast first argues that Frontline's promissory fraud claim should be dismissed because future promises are not actionable in Illinois. Frontline concedes that future promises are not generally actionable in Illinois, but argues that its fraud claim falls under an exception to the rule. Promissory fraud applies where a party makes a promise of performance, not intending to keep the promise but intending for another party to rely on it, and where the other party relies on it to its detriment. *Metro Premium Wines v. Bogle Vineyards, Inc.*, No. 11 C 911, 2011 U.S. Dist. LEXIS 65306, at *24-26 (N.D. Ill. June 14, 2011). Under Illinois law, however, a promise to perform an act in the future is not actionable unless the false promise is part of a larger scheme or device to defraud another of their property. *Haught v. Motorola Mobility, Inc.*, 12 C 2515, 2012 U.S. Dist. LEXIS 119575, at *20 (N.D. Ill. Aug. 23, 2012). Therefore, to survive a motion to dismiss, a claimant relying on a theory of promissory fraud must allege specific, objective manifestations of fraudulent intent—of a scheme or device to defraud. *Id*.

Moreover, "the distinction between a mere promissory fraud and a scheme of promissory fraud is elusive, and has caused, to say the least, considerable uncertainty, as even the Illinois cases acknowledge." *J.H. Desnick v. American Broadcasting Cos.*, 44 F.3d 1345, 1354 (7th Cir. 1995). Some cases suggest that the exception has swallowed the rule while others seem unwilling to apply the exception. *Id*. The Seventh Circuit's best interpretation of Illinois case law "is that promissory fraud is actionable only if it either is particularly egregious or, what may amount to the same thing, it is embedded in a larger pattern of deceptions or enticements that reasonably induces reliance and against which the law ought to provide a remedy." *Id*.

The fraud alleged in this case does not meet this standard. Frontline alleges that between April 2009 and November 2011 Comcast made false representations that Frontline had to meet performance objectives and metrics in order to maintain its contract and continue receiving future work. (Compl. at ¶¶ 28-29). Frontline alleges that "in reliance on such representations it made significant investments in its business – purchasing vehicles, buying equipment, hiring employees, and expanding its operations to Florida." (Compl. at ¶ 30). However, Frontline began expanding its business operations to Fort Lauderdale, Florida in February 2009, one month after entering the Agreement, which was terminable at will, and two months before any alleged representations were even made. (Compl. at ¶¶ 17-18, 29). Comcast's representations

made after Frontline's decision to expand its operations to Florida could not have reasonably induced Frontline's reliance.

Additionally, even if Frontline were to argue that Comcast's promises induced its expansion of its Florida operations from Fort Lauderdale to West Palm Beach in June 2011, such reliance would be unreasonable. Frontline alleges that on two separate occasions in December 2009 and July 2010, Comcast executives attempted to get Frontline to partake in a "pay for play" scheme whereby Frontline would provide Comcast executives with money or gifts in order to be awarded work. These alleged solicitations were made prior to Frontline expanding its Florida operations to West Palm Beach. It is unreasonable for Frontline to make significant business investments based on a contract that was terminable at will and in light of alleged interactions with Comcast executives which indicated that Comcast may be engaged in a "pay for play" scheme. Moreover, Frontline alleges that it "was advised by Comcast that in order to receive work and maintain its contract, Frontline needed to meet certain performance metrics and objectives set forth by Comcast." (Compl. at ¶¶ 28-29). The Court agrees with Comcast that such representations do not amount to an express promise that Comcast would affirmatively give Frontline future work. *Dawson v. W. & H. Voortman, Ltd.*, 853 F. Supp. 1038, 1045 (N.D. Ill. 1994). At best, such representations were qualifications for eligibility to continue to receive work under the contract, which by its terms was terminable at will. Accordingly, Frontline's promissory fraud claim is dismissed with prejudice

2. *Count II: Civil Conspiracy Claim*

Comcast argues that Frontline's civil conspiracy claim should be dismissed as barred by the intracorporate conspiracy doctrine and for failing to meet the particularity standards of Fed. R. Civ. P. 9(b). The intracorporate conspiracy doctrine provides that an agent acting within the scope of his employment cannot conspire with the principal or with other agents because the acts of an agent are considered to be the acts of the principal. *Milliman v. McHenry County*, 11 C 50361, 2012 U.S. Dist. LEXIS 151570, at *11-12 (N.D. Ill. Oct. 22, 2012). Therefore, Illinois law is clear that a civil conspiracy does not exist between a corporations' own officers or employees. *Id*. There are two exceptions to the intracorporate conspiracy doctrine when: (1) a conspirator acts out of self-interest rather than in the principal's interest; or (2) the scope of the act goes beyond the conspirator's official duties. *Bryant v. QuiBids LLC*, No. No. 11-cv-1013, 2012 U.S. Dist. LEXIS 14658 (N.D. Ill. Feb. 3, 2012).

Frontline argues that it has properly alleged a conspiracy between "two separate corporate entities of Comcast" (the two named defendants in this case) and that it has sufficiently pled with the specificity required pursuant to Rule 9(b). (Resp. at 10). The Court however, cannot determine whether the intracorporate conspiracy doctrine is applicable here because Frontline has failed to plead its civil conspiracy claim with the requisite specificity. Fed. R. Civ. P. 9(b) requires Frontline to allege with particularity the "who, what, where, when, and how" of the alleged fraud. S*uburban Buick, Inc. v. Gargo*, No. No. 08 CV 370, 2011 U.S. Dist. LEXIS 50036 (N.D. Ill. May 9, 2011). Frontline does not distinguish between the two Comcast defendants throughout the entirety of its complaint. Indeed, Frontline refers to the two individual defendants collectively as ("Comcast") and never differentiates them in its civil conspiracy count. It is only in its response to Comcast's motion to dismiss that Frontline attempts for the first time to distinguish between the two corporate defendants as separate entities in an effort to argue that the intracorporate conspiracy doctrine is inapplicable.

While Frontline lists several specific "Comcast" executives alleged to have solicited and/or accepted cash, gifts and other benefits from contractors, Frontline does not delineate which specific defendant corporation these agents are employed for or with whom exactly they engaged in the alleged conspiracy. The Court notes however that if there is a principal/agent relationship between defendants Comcast Corporation and Comcast Cable Communications Management, LLC, the intracorporate conspiracy doctrine would still be applicable. *See Milliman*, 2012 U.S. Dist. LEXIS 151570, at *11-12. Accordingly, Frontline's civil conspiracy claim is dismissed without prejudice.

*3. Count III: Breach of Contract*

Section 7(t) of the parties' contract specifically provides that Frontline will "not directly or indirectly offer or provide any employee, agent or representative of [Comcast], with any gift, gratuity, or any other form of compensation." (Compl. at ¶ 66). Comcast argues that Frontline's breach of contract claim should be dismissed because Section 7(t) sets out Frontline's obligations and duties and not Comcast's duties. Comcast argues that Frontline's breach of contract claim cannot be based on a contract term defining Frontline's own duties. Frontline concedes that Section 7(t) sets forth its duties and not Comcast's duties. Frontline argues, however, that the duties of good faith and fair dealing prevent Comcast from soliciting and causing a contractor to breach Section 7(t) of the Agreement.

5

As Comcast correctly argues, the "breach of the duty of good faith and fair dealing arises only when one party is vested with contractual discretion and exercises that discretion arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectation of the parties." *VR Holdings, Inc. v. LaSalle Bus. Credit, Inc.*, No. 01 C 3012, 2002 U.S. Dist. LEXIS 3654 (N.D. Ill. Mar. 5, 2002) (internal quotations omitted). Accordingly, it is clear that "the good faith duty to exercise contractual discretion reasonably is inapplicable where no contractual discretion exists." *Id*. Here, Frontline concedes that the provision allegedly breached by Comcast does not provide Comcast with any duties or discretion. Therefore, the duty of good faith is inapplicable. Accordingly, Frontline's breach of contract claim is dismissed with prejudice.

*4. Count IV: Intentional Interference with Prospective Economic Advantage*

Lastly, Comcast moves to dismiss Count IV of Frontline's complaint for tortious interference with prospective economic advantage on the grounds that Frontline has failed to state a claim upon which relief can be granted. The elements for a tortious interference with prospective economic advantage claim are: "1) a reasonable expectancy of a valid business relationship; 2) defendant must know about it; 3) defendant must intentionally interfere and defeat this legitimate expectancy; and 4) the intentional interference must injure the plaintiff." *Unique Envelope Corp. v. GSAmerica, Inc.*, 2002 U.S. Dist. LEXIS 6871, 9-10 (N.D. Ill. Apr. 16, 2002). A plaintiff states a cause of action "only if he alleges a business expectancy with a specific third party and action by the interfering party directed toward the party with whom the plaintiff expects to do business." *Id*.

In this case Frontline has not adequately alleged a cause of action for tortious interference with prospective economic advantage. Frontline alleges that it entered into negotiations with a third party, FTS USA, Inc. ("FTS"), for the purpose of selling its Florida operations. (Compl. at ¶¶ 78-79). Frontline claims that it reasonably expected to consummate a transaction whereby FTS would purchase its Florida operations. Frontline alleges that Comcast learned of its contract negotiations with FTS from both Frontline and FTS on at least three different occasions. (Compl. at ¶¶ 80-82). However, Frontline does not allege that Comcast ever contacted FTS for the purpose of intentionally interfering with the expected contract between Frontline and FTS. Frontline merely alleges that Comcast terminated its contract with Frontline because of Frontline's refusal to partake in the alleged "pay for play" scheme. *See Mercury Skyline Yacht Charters v. Dave Matthews Band, Inc.*, No. 05 C 1698, 2005 U.S. Dist. LEXIS 29663 (N.D. Ill.

6

Nov. 22, 2005) (holding that "because Plaintiff solely alleges acts of intentional interference that were directed at Plaintiff itself rather than at prospective passengers, it does not state a required element of the claim for tortious interference with prospective business relationships"). Accordingly, Frontline's intentional interference with prospective economic advantage claim is dismissed with prejudice**.**

**Conclusion**

      For the foregoing reasons Comcast's motion to dismiss Frontline's complaint in its entirety is granted. Counts I, III, and IV are dismissed with prejudice. Count II is dismissed without prejudice.

IT IS SO ORDERED.

Date: September 5, 2013

                                                                    Sharon Johnson Coleman
                                                                      United States District Judge